UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LINDA KING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:17 CV 2551 CDP |
| | ) | |
| SOUTHWEST FOODSERVICE | ) | |
| EXCELLENCE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

# **MEMORANDUM AND ORDER**

This diversity action came before the Court on plaintiff Linda King's claim that her employer, defendant Southwest Foodservice Excellence, LLC, wrongfully discharged her from her employment for serving on a grand jury in the fall of 2014, in violation of the public policy of Missouri. The matter was tried to a jury who returned a verdict in King's favor and awarded her $156,500 in actual damages and $75,000 in punitive damages. Under Fed. R. Civ. P. 50(b), defendant Southwest Foodservice renews its motion for judgment as a matter of law on King's claim. Alternatively, defendant requests a new trial. I will deny the motion.

## **Judgment as a Matter of Law**

I denied defendant's motion for judgment as a matter of law at the close of King's case and again at the close of all the evidence. Fed. R. Civ. P. 50(a). In its renewed motion for judgment as a matter of law, defendant contends that it is

entitled to judgment on King's claim for wrongful discharge for several reasons: 1) the availability of a statutory cause of action under Mo. Rev. Stat. § 494.460(2) extinguished King's ability to bring a common law claim of wrongful discharge; 2) the relevant ninety-day statute of limitations under § 494.460(2) expired before King brought this lawsuit; 3) King failed to establish a *prima facie* case of wrongful discharge because there was no evidence showing a causal connection between her jury service and discharge; 4) King failed to establish a *prima facie* case justifying punitive damages because there was no evidence of outrageous conduct; and 5) Missouri's workers' compensation law provides the sole remedy for emotional distress damages.

A motion for judgment as a matter of law should be granted only if the jury's verdict is utterly lacking in evidentiary support. *In re Prempro Prods. Liab. Litig.,* 586 F.3d 547, 571 (8th Cir. 2009). When deciding a Rule 50 motion, I must construe the evidence most favorably to the prevailing party and draw all inferences in her favor, denying the motion "if reasonable persons could differ as to the conclusions to be drawn from the evidence." *Western Am., Inc. v. Aetna Cas. & Sur. Co.,* 915 F.2d 1181, 1183 (8th Cir. 1990). I may not make credibility determinations or weigh the evidence. *In re Prempro,* 586 F.3d at 572 (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000)). Under these standards, defendant's motion must be denied.

First, in a Memorandum and Order entered shortly after this case was filed, I thoroughly addressed and rejected the same claims defendant raises in the first and second grounds of its renewed motion here. (*See* ECF 12.) Nothing presented at trial or in the present motion changes my previous conclusions or serves as a basis for disturbing the jury's verdict. I will deny these grounds of defendant's motion.

I will also deny defendant's claims that no causal connection between King's grand jury service and her discharge was shown, and that King failed to present a submissible case for punitive damages. Construing the evidence most favorably to King and drawing all inferences in her favor, I find that the evidence presented to the jury, in its totality and after review, supports the jury's conclusions that King's service on the grand jury beginning in August 2014 and continuing through September and October was a contributing factor in defendant's termination of her employment on October 20, 2014, and that defendant acted with reckless disregard to King's rights and interests.

The following evidence presented to the jury through exhibits and witness testimony supports the jury's conclusions: Immediately upon being summoned by the Circuit Court of St. Louis City in early August 2014, King informed defendant that she was called for grand jury service and, upon being selected as a grand juror, she told defendant of the days she was required to serve. Defendant knew that jury service was a protected status under Missouri law, subject to non-discrimination

protections. Shortly after King began her jury service, defendant's human resources representative told her that she would have to choose between her job or jury duty. On August 21, King's immediate supervisor wrote a disciplinary notice for King's failure to perform a specific job duty on August 14, which was a day the supervisor knew that King was serving on the grand jury. This same supervisor sought King's termination for this incident, but defendant's food director said no. The supervisor then began keeping a detailed list of food deficiencies that occurred during the period of King's jury service, but she did not counsel King regarding these deficiencies or attempt to reconcile any misconception regarding who had food-ordering responsibilities during this period – indeed, King and another food service employee thought that the supervisor shared responsibility for placing food orders in King's absence. This supervisor complained that King's absence from the school during jury duty caused her (the supervisor) to spend too much time at King's school and possibly neglect the other schools she supervised. With the assistance of human resources, this supervisor prepared King's termination notice on October 15, which was then presented to the food director with the prepared list documenting the food-deficiencies. Without verifying that it was King's responsibility to place the food orders during her period of jury service or that it was King who placed improper food orders that caused the food deficiencies, the director signed the termination notice. The notice was given to King on October 20. It was during

this termination meeting that King was first informed of the documented food deficiencies and that defendant expected her to be solely responsible to place food orders during her period of jury service. King completed her grand jury service in early November 2014.

From this evidence, a reasonable juror could conclude that King's service on the grand jury was a contributing factor in defendant's termination of her employment, and that King showed with convincing clarity that such wrongful termination was, at the very least, in reckless disregard for her rights and interests, especially given defendant's knowledge that jury service is a protected status. Accordingly, given the evidentiary support for the jury's verdict, I must deny defendant's renewed motion for judgment as a matter of law on the bases claimed. I will also deny defendant's related request that I vacate that portion of the jury's verdict awarding King punitive damages.

Finally, King's recovery in this action for her emotional distress is not barred by Missouri's workers' compensation law. This law provides the exclusive remedy to an employee for "personal injury . . . by accident or occupational disease arising out of and in the course of the employee's employment." Mo. Rev. Stat. § 287.120.1 (2012). Under § 287.120.9, "[a] mental injury is not considered to arise out of and in the course of the employment if it resulted from any disciplinary action, work evaluation, job transfer, layoff, demotion, termination or any similar action

taken in good faith by the employer."[1] Defendant argues that if a mental injury resulting from a good-faith termination is not considered to arise out of and in the course of employment, then such an injury from a bad-faith termination – such as one where punitive damages are warranted – must be considered employment-related and thus covered by the workers' compensation law. Defendant further argues that, regardless, the question of whether King's injury was an "accident" for workers' compensation purposes is one reserved exclusively to the Missouri Labor and Industrial Relations Committee, and that I and the jury therefore lacked jurisdiction over King's claim of employment-related emotional injury.

In *Ascare v. MasterCard Int'l Inc.*, a judge of this district held that Missouri's workers' compensation law does not apply to claims of emotional distress that arise directly from unemployment rather than from the termination itself. *Ascare*, No. 4:10CV1979 JCH, 2012 WL 3548028, at *13 (E.D. Mo. Aug. 16, 2012). "[R]egardless of whether Plaintiff allegedly suffered such distress in the immediate aftermath of [her] termination or during the weeks following [her] termination, such distress did not 'arise out of and in the course of' Plaintiff's employment." *Id.* Here, King adduced evidence at trial showing that her emotional distress directly arose from circumstances that occurred after she was terminated, that is, from her

---

[1] This provision was added to the statute by amendment in 1992. Prior to this amendment, the statute had no provision dealing specifically with claims of emotional distress. *Compare* WORKERS' COMPENSATION, 1990 Mo. Legis. Serv. S.B. 751 (Vernon), *with* WORKERS' COMPENSATION, 1992 Mo. Legis. Serv. H.B. 975 (Vernon).

unemployment. She could no longer assist in paying bills. Her home was foreclosed upon and she was forced to move to an apartment, which in turn forced her to give up her dogs. She collected food stamps and went to churches in the neighborhood to obtain food. She cried a lot, could not sleep, and was depressed. While her unemployment was the result of her unlawful discharge, her distress did not arise directly from her actual employment or from the termination itself, but rather from the circumstances that occurred afterward. Accordingly, King's mental injury did not "arise out of and in the course of" her employment, and the workers' compensation law does not apply. *Id.*. This is true regardless of whether defendant acted in good faith or bad faith when it terminated King's employment. And since the workers' compensation law does not apply in the first instance, whether King's injury was an "accident" under that law is not relevant to the claim and defendant's jurisdictional challenge fails.

Defendant's final point is denied. I will also deny defendant's related request that I reduce the actual-damages portion of the jury's verdict by an amount reflecting King's emotional distress.

## Motion for New Trial

As alternative relief, defendant seeks a new trial under Fed. R. Civ. P. 59(a)(1)(A), arguing that I made several evidentiary errors as well as errors in the instructions given to the jury. Defendant also argues that the jury's verdict was

unsupported by and/or against the weight of the evidence and contrary to law and, further, that cumulative error deprived it of a fair trial.

Under Rule 59(a)(1)(A), "[a] new trial is appropriate when the first trial, through a verdict against the weight of the evidence, an excessive damage award, or legal errors at trial, resulted in a miscarriage of justice." *Gray v. Bicknell*, 86 F.3d 1472, 1480 (8th Cir. 1996). A miscarriage of justice does not result whenever there are inaccuracies or errors at trial; instead, the party seeking a new trial must demonstrate that there was prejudicial error. *Buchholz v. Rockwell Int'l Corp.*, 120 F.3d 146, 148 (8th Cir. 1997). A new trial based on errors in evidentiary rulings or in jury instructions will only be granted where the error likely affected the jury's verdict. *Diesel Mach., Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 823 (8th Cir. 2005) (evidentiary rulings); *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 720 (8th Cir. 2008) (jury instructions).

A.  Weight of the Evidence

"[T]he prevention of injustice is the overriding principle in deciding whether to grant a new trial on the ground that the verdict was against the weight of the evidence." *Leichihman v. Pickwick Int'l,* 814 F.2d 1263, 1267 (8th Cir. 1987). "A motion for new trial is addressed to the judicial discretion of the district court and will not be reversed except for a clear abuse of that discretion." *Id.* at 1267-68. "The court should reject a jury's verdict only where, after a review of all the

evidence giving full respect to the jury's verdict, the court is left with a definite and firm conviction that the jury has erred." *Ryan v. McDonough Power Equip., Inc.*, 734 F.2d 385, 387 (8th Cir. 1984). Where reasonable minds can differ in evaluating the credible evidence, a new trial based on the weight of the evidence should not be granted. *Jacobs Mfg. Co. v. Sam Brown Co.*, 19 F.3d 1259, 1267 (8th Cir. 1994).

For the reasons stated above, the verdict was not against the weight of the evidence on King's claim of wrongful discharge and the remedies she sought. Based on all the evidence adduced at trial, and upon consideration of the arguments of the parties, I do not find the jury's verdict to be against the clear weight of the evidence. Nor am I convinced that the jury erred in reaching its verdict. This case involved diametrically opposed credible evidence, "and it is the jury's function to choose between plausible versions of the evidence." *Jacobs Mfg.*, 19 F.3d at 1267. Defendant's motion for a new trial based on the weight of the evidence is denied.

B.  Evidentiary Rulings

"An allegedly erroneous evidentiary ruling does not warrant a new trial unless the evidence was so prejudicial that a new trial would likely produce a different result." *Burris v. Gulf Underwriters Ins. Co.*, 787 F.3d 875, 880 (8th Cir. 2015) (internal quotation marks and citation omitted). To the extent defendant argues that I erred in admitting evidence of King's emotional distress given that her exclusive remedy was under Missouri's workers' compensation law, I reject this argument for

the reasons stated above.

Defendant also argues that I erred in excluding evidence that it denied King's grievance filed under the collective bargaining agreement, as well as evidence that King's agent did not pursue the grievance further. I continue to believe that my ruling to exclude this evidence was correct. To allow it would have required additional evidence regarding the grievance process itself, union policies, and reasons underlying why certain actions were or were not taken by King's union representative. Undergoing such a mini-trial on a collateral issue would have likely lead to confusion of the issues and undue delay. I will therefore deny the motion for new trial on this ground as well.

C.  <u>Jury Instructions</u>

Defendant contends that I committed five errors with the jury instructions: 1) that I should not have given the verdict director on King's claim of wrongful discharge because there was no evidence of causal connection between King's grand jury service and her termination; 2) that I should not have given the punitive damages instruction because there was no evidence of defendant's outrageous conduct; 3) that I failed to require the jury to allocate King's damages between monetary damages and damages for emotional distress and 4) failed to submit defendant's proffered verdict form to the jury that included such allocation; and 5) that I failed to give defendant's proffered instruction no. 27 – its "business

judgment" instruction.

For the reasons set out above, the claims raised in the first and second grounds of defendant's argument are denied. With respect to the allocation of King's compensatory damages, defendant makes only a cursory claim that it was prejudiced by my failure to instruct the jury on allocation. Even if the failure to so instruct constituted error, defendant's mere statement of prejudice with nothing more is an insufficient basis upon which to grant a new trial. Defendant does not argue or attempt to show that the jury's verdict would have been different if the jury had been instructed to allocate King's damages.

Finally, Missouri law does not require a "business judgment" instruction in public policy/wrongful discharge actions brought under Missouri common law.[2] Nor does Missouri law require a business judgment instruction in any employment discrimination action that accrued before August 28, 2017. *See* Mo. Approved Jury Instr. (Civil) 38.08 (7th ed), Committee Comment (2018 New), Historical Note (2018 New). To the extent defendant relies on Eighth Circuit Model Jury Instructions and Eighth Circuit precedent to argue that the business judgment instruction should have been given here, it is incorrect. This action arises under Missouri law, not under federal law, and Missouri Courts do not require that a

---

[2] Defendant's proposed instruction read "[y]ou may not return a verdict for the plaintiff just because you might disagree with the defendant's (decision) or believe it to be harsh or unreasonable." (ECF 34 at p. 34.)

business judgement instruction be given in an employment case based on state law. *See McBryde v. Ritenour Sch. Dist.*, 207 S.W.3d 162, 171 (Mo. Ct. App. 2006). This point is denied.

D.   Cumulative Error

Since none of the alleged errors resulted in prejudice to the defendant, I reject defendant's claim that the cumulative effect of the alleged errors warrants a new trial.   *State v. Gray*, 887 S.W.2d 369, 390 (Mo. banc 1994); *Pittman v. Ripley Cty. Mem'l Hosp.*, 318 S.W.3d 289, 297 (Mo. Ct. App. 2010).

Accordingly,

**IT IS HEREBY ORDERED** that defendant Southwest Foodservice Excellence, LLC's Renewed Motion for Judgment as a Matter of Law, and Motion for a New Trial and/or to Amend Judgment [75] is **DENIED.**

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 18th day of November, 2019.